MAGGIE E. SCHROEDTER, ESQ. (Bar No. 270377)
maggie@theRSfirm.com
LANE C. HILTON, ESQ. (Bar No. 314892)
lane@theRSfirm.com
ROBBERSON SCHROEDTER LLP
501 West Broadway, Suite 1260
San Diego, California 92101
(619) 353-5691

Attorneys for Creditor
THE CITY OF SAN LEANDRO

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MONARCH BAY FOR SALE RESIDENTIAL, LLC,<br><br>Debtor. | Case No.: 2:24-bk-14877-DS<br><br>Chapter 11, Subchapter V<br><br>**MOTION TO APPROVE DISCLOSURE STATEMENT WITH REGARDS TO CREDITOR'S FIRST AMENDED CHAPTER 11 LIQUIDATING PLAN DATED DECEMBER 5, 2025**<br><br>Date: January 20, 2026<br>Time: 1:00 PM<br>Courtroom: 1639<br>Judge: Hon. Deborah J. Saltzman |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. JURISDICTION, AND VENUE ................................................................................ 1

III. BACKGROUND ........................................................................................................ 1

    A. The Shoreline Property ..................................................................................... 1

    B. The Agreements ................................................................................................ 2

        1. The DDA ............................................................................................... 2

        2. The PSA ................................................................................................ 2

        3. The Amendments to the PSA and DDA ............................................... 2

        4. The Development Agreement ............................................................... 3

        5. Debtor's Acquisition of the Real Property/ Note and Deed of Trust .................................................................................................. 3

    C. The Chapter 11 Case ......................................................................................... 4

IV. LEGAL STANDARD ................................................................................................ 5

    A. The Disclosure Statement Must Contain Adequate Information ...................... 5

    B. The Disclosure Statement Contains "Adequate Information" .......................... 7

V. COMPLIANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3017 AND LOCAL BANKRUPTCY RULE 3017-1 ............. 8

VI. CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Brotby*,
  303 B.R. 177 (B.A.P. 9th Cir. 2003) .................................................................. 5

*In re Copy Crafters Quickprint, Inc.*,
  92 B.R. 973 (Bankr. N.D.N.Y. 1988) ................................................................ 7

*In re Dakota Rail, Inc.*
  (Bankr. D.Minn. 1989) 104 B.R. 138 ................................................................ 5

*In re Diversified Invs. Fund XVII*,
  91 B.R. 559 (Bankr. C.D. Cal. 1988) ................................................................ 6

*In re Ferretti*,
  128 B.R. 16 (Bankr. D. N.H. 1991) ................................................................... 7

*In re Metrocraft Pub. Servs. Inc.*,
  39 B.R. 567 (Bankr. N.D. Ga. 1984) .............................................................. 1, 7

*In re Momentum Mfg. Corp.*,
  25 F.3d 1132 (2d Cir. 1994) ............................................................................. 6

*In re Monnier Bros.*,
  755 F.2d 1336 (8th Cir.1985) ........................................................................... 6

*In re Phoenix Petroleum Co.*,
  278 B.R. 385 (Bankr. E.D. Pa. 2001) ............................................................... 7

*In re Scioto Valley Mortgage Co.*,
  88 B.R. 168 (Bankr. S.D. Ohio 1988) .............................................................. 7

**Statutes**

11 U.S.C. § 101(51B) ............................................................................................. 4

11 U.S.C. § 1121(b) ............................................................................................... 5

11 U.S.C. § 1125 ................................................................................................ 1, 8

11 U.S.C. §1125(a) ............................................................................................ 5, 6

11 U.S.C. § 1125(b) ..........................................................................................................5

28 U.S.C. §§ 157 and 1334 ............................................................................................1

28 U.S.C. § 157(b)(2) .....................................................................................................1

28 U.S.C. §§ 1408 and 1409 ..........................................................................................1

11 U.S.C. § 362(d)(3) .....................................................................................................4

11 U.S.C. § 1107 and 1108 ............................................................................................4

Government Code Section 65864 ..................................................................................3

**Other Authorities**

Federal Rule of Bankruptcy Procedure 3017 .......................................................... 1, 8

Federal Rule of Bankruptcy Procedure 3017 (b) ..........................................................8

Secured Creditor City of San Leandro ("City") files this Motion to Approve the Disclosure Statement with Respect to the First Amended Chapter 11 Liquidating Plan for dated December 8, 2025 (the "Motion"), which is attached to the Disclosure Statement as **Exhibit A.**

## I. INTRODUCTION

The Disclosure Statement contains "adequate information" to enable a hypothetical reasonable investor or relevant class member to make an informed judgment about the proposed Chapter 11 Liquidating Plan (the "Plan") as required under 11 U.S.C. § 1125. The City's Disclosure Statement satisfies all of the factors set forth in *In re Metrocraft Pub. Servs. Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). The Disclosure Statement also complies with Federal Rule of Bankruptcy Procedure 3017 and LBR 3017-1.

## II. JURISDICTION, AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

### A. The Shoreline Property

The City owned real property consisting of seventy-five acres located within the City of San Leandro in the Shoreline-Marina area. The City selected Cal Coast Companies, LLC ("Cal Coast"), the parent company of Debtor Monarch Bay for Sale Residential, LLC (the "Debtor"), as the developer to develop the Shoreline area with a multi-component development that includes the construction of single and multi-family residential units, the reconstruction of a nine-hole executive golf course, a hotel, a restaurant, a market, and associated infrastructure improvements (the "Shoreline Project").

///

///

### B. The Agreements

#### 1. The DDA

On July 22, 2020, the City and Cal Coast entered into a Disposition and Development Agreement regarding development of approximately 75 acres within the City in the Shoreline-Marina area ("DDA"). The DDA requires the Developer, defined as Cal Coast and any permitted assignee or successor-in-interest, to develop the Shoreline Project. The Shoreline Project includes the construction of 200-215 single family homes and townhomes ("Residential Element"). The DDA provides for the City to convey fee title and leasehold interests to Cal Coast as follows: (1) the sale of the land to Cal Coast pursuant to a purchase and sale agreement (defined below); (2) ground leases for land for the construction of the hotel, the multi-family element, the restaurant element, and the market element.

#### 2. The PSA

In connection with the DDA, on July 22, 2020, the City and Cal Coast entered into a Purchase and Sale Agreement ("PSA") for the development of the Single Family Element and pursuant to which the City conveyed the east side parcel of the Shoreline Area (the "Property") to Cal Coast in exchange for a purchase price of not less than $29,345,092. The PSA incorporates the development obligations of the DDA, and obligates the buyer to design and construct the Residential Element as well as to redesign and reconstruct the Golf Course Element.

#### 3. The Amendments to the PSA and DDA

On March 17, 2021, the City and Cal Coast entered into the First Amendment to Purchase and Sale Agreement and Disposition and Development Agreement. The First Amendment revised the PSA and the DDA Schedules of Performance, among other things.

On July 22, 2020, the City and Cal Coast entered into the Second Amendment to Purchase and Sale Agreement and Disposition and Development Agreement to provide for certain conditions to be satisfied prior to the close of escrow for the

conveyance of the Property to Cal Coast and commencement of the ground leases. The Second Amendment revised the PSA Scope of Development, which sets forth the dates by which Cal Coast shall construct and develop the Single Family Element of the Shoreline Project.

On December 19, 2022, the City and Cal Coast entered into the Third Amendment to Purchase and Sale Agreement and Disposition and Development Agreement. Cal Coast requested that the City provide short-term seller takeback financing for a portion of the purchase price of the Property, and the Third Amendment was entered into to provide for the City to make a short-term seller takeback loan to Cal Coast evidenced by a promissory note.

### 4. The Development Agreement

On December 22, 2022, the City and Cal Coast entered into the Development Agreement ("DA"), which was recorded with the Alameda County Recorder on December 30, 2022. The DA runs with the Property.

The DA was entered into pursuant to Government Code Section 65864, which authorizes the City to enter into a development agreement for real property with any person having a legal or equitable interest in such property in order to establish certain development rights in the property.

### 5. Debtor's Acquisition of the Real Property/ Note and Deed of Trust

Cal Coast created the Debtor to hold the Property and develop the Residential Element of the Shoreline Project.

On December 20, 2022, pursuant to Paragraph 12 of the PSA, the Debtor and Cal Coast entered into an Assignment and Assumption of Contract and Escrow Instructions, pursuant to which Cal Coast assigned all of its rights, title, interest, and delegated all of its duties under the PSA to Debtor. These rights and duties include the right and duty to develop the Residential Element and the Golf Course Element, as set forth in the PSA.

On or about December 22, 2022, the City loaned Debtor $24,882,958 for payment of a portion of the purchase price of the Property. In order to memorialize the loan, on December 22, 2022, the Debtor signed a Promissory Note (the "Note") for the amount as the loan, which is secured by a recorded Deed of Trust in favor of the City. The Note obligates the Debtor to pay the principal amount plus interest at a rate of 7.5%, which rate adjusted to the then-current prime rate of interest if the term of the Note was extended.

The Property owned by the Debtor is commonly referred to as the "Eastside", which development will be comprised of the Residential Element and the Golf Course Element. The Westside" is owned by the City, and which development was designed to include a hotel, multifamily residential units, a restaurant, a market, and associated infrastructure improvements. The development also contemplates the construction of the "Monarch Bay Drive Element" and the "Infrastructure Element". The Debtor's parent company, Cal Coast, and its affiliate LLCs, are currently responsible for the development of the Westside Elements, the Monarch Bay Drive Element and the Infrastructure Element, pursuant to four ground leases and the DDA. Cal Coast and/or its affiliates are presently in default under the DDA and the ground leases.

C.    **The Chapter 11 Case**

On June 20, 2024 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [ECF No. 1.] Debtor designated the business as a Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)). Debtor has continued to manage its assets and property as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been appointed in this chapter 11 case. Pursuant to section 362(d)(3) of the Bankruptcy Code, the Debtor has made adequate protection payments to the City

///

///

since September 2024.[1]

The exclusivity period pursuant to 11 U.S.C. § 1121(b) expired on October 18, 2024. Debtor has not filed a plan of reorganization.

## IV. LEGAL STANDARD

### A. The Disclosure Statement Must Contain Adequate Information

Bankruptcy Code Section 1125 sets forth the provisions for post-petition disclosure and solicitation and states in relevant part:

(a) In this section-

(1)"adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need no include such information about any other possible or proposed plan . . . .

11 U.S.C. §1125(a). A plan proponent may not solicit the acceptance or rejection of a plan or reorganization unless the holders of relevant claims/interests are provided with a disclosure statement approved by the bankruptcy court that contains "adequate information" regarding the chapter 11 plan of reorganization, or, in this case, the liquidating plan. 11 U.S.C. § 1125(b).

The statutory definition of "adequate information" leaves bankruptcy courts with wide discretion to determine on a case-by-case basis whether a disclosure statement contains adequate information without burdensome, unnecessary, and cumbersome detail. *In re Dakota Rail, Inc.* (Bankr. D.Minn. 1989) 104 B.R. 138; *see also In re Brotby*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003). Flexibility is needed

---

[1] The City reserves all rights with respect to the calculation and determination of the rate of interest applied to the adequate protection payments made by the Debtor to the City.

since there is frequently great uncertainty in reorganization cases. *In re Diversified Invs. Fund XVII*, 91 B.R. 559, 560–61 (Bankr. C.D. Cal. 1988). "The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan." *In re Monnier Bros.,* 755 F.2d 1336, 1342 (8th Cir.1985), cited approvingly by *In re Diversified Invs. Fund XVII*, 91 B.R. 559, 560–61 (Bankr. C.D. Cal. 1988). Therefore, a disclosure statement must provide information that is "reasonably practicable" to permit an "informed judgment" by the applicable creditors and interest holders to vote on a plan. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).

   In determining whether a disclosure statement contains "adequate information," such that it satisfies section 1125(a), bankruptcy courts may consider evaluate some or all of the following factors:

  (1) the events which led to the filing of a bankruptcy petition;

  (2) a description of the available assets and their value;

  (3) the anticipated future of the company;

  (4) the source of information stated in the disclosure statement;

  (5) a disclaimer;

  (6) the present condition of the debtor while in Chapter 11;

  (7) the scheduled claims;

  (8) the estimated return to creditors under a Chapter 7 liquidation;

  (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

  (10) the future management of the debtor;

  (11) the Chapter 11 plan or a summary thereof;

  (12) the estimated administrative expenses, including attorneys' and accountants' fees;

  (13) the collectibility of accounts receivable;

(14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;

(15) information relevant to the risks posed to creditors under the plan;

(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

(17) litigation likely to arise in a nonbankruptcy context;

(18) tax attributes of the debtor; and

(19) the relationship of the debtor with affiliates.

*In re Metrocraft Pub. Servs., Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). *See also e.g.*, *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement evaluated in light of the factors set forth in *Scioto Valley Mortgage*). Not all factors are necessary in every case, nor is the list exhaustive. *See In re Ferretti*, 128 B.R. 16, 18-19 (Bankr. D. N.H. 1991) (adopting similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

### B. The Disclosure Statement Contains "Adequate Information"

The City's Disclosure Statement contains sufficient information to permit creditors and equity security holders to make an informed decision about whether to vote to accept or reject the Plan.

| Factor | Section |
| --- | --- |
| Events leading to filing | IV |
| Description of the available assets and their value; | IV; V(A) |
| Anticipated future of the company | V(B) |
| Source of information | All |
| Disclaimer | Introduction |
| Condition of debtor | V(A) |
| Scheduled claims | II(A) |
| Liquidation analysis | VII(A); Exhibit C |
| Chapter 11 plan/summary | II |

| | |
|---|---|
| Estimated administrative expenses | II(A)(1) |
| Financial information and projections | V(A); Exhibit B |
| Feasibility of the plan | VI |
| Risks | VI(B); VII(E) |
| Projected realized value from avoidable transfers | VII(F) |
| Federal tax consequences | VII(B) |

## V. COMPLIANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3017 AND LOCAL BANKRUPTCY RULE 3017-1

FRBP 3017(a) provides that a hearing is required to consider the adequacy of a disclosure statement and, along with any objections or modifications. After the hearing "the court shall determine whether the disclosure statement should be approved." Federal Rule of Bankruptcy Procedure § 3017 (b). Additionally, the City has complied with LBR 3017-1, which provides for 42 days' notice of the hearing on the Motion, by concurrently filing and serving the Notice of Disclosure Statement Hearing on all of the creditors of the estate.

## VI. CONCLUSION

Based on the foregoing, the City respectfully requests that the Bankruptcy Court grant the Motion and enter an order stating the Disclosure Statement has "adequate information" within the meaning of Bankruptcy Code Section 1125 and should be approved to use in soliciting the votes of the Debtor's creditors.

DATED: December 5, 2025

ROBBERSON SCHROEDTER LLP

By: */s/ Maggie E. Schroedter*

MAGGIE E. SCHROEDTER, ESQ.
LANE C. HILTON, ESQ.
Attorneys for Secured Creditor
THE CITY OF SAN LEANDRO